UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

STEPHEN BUSHANSKY,

              Plaintiff,

       v.

PROPTECH INVESTMENT CORPORATION,
II, THOMAS D. HENNESSY, M. JOSEPH
BECK, JACK LEENY, COURTNEY
ROBINSON, MARGARET WHELAN,
GLORIA FU, and ADAM BLAKE,

              Defendants.

------------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.    This action is brought by Plaintiff against PropTech Investment Corporation II ("PTIC II" or the "Company") and the members of PTIC II's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which PTIC II will be combined with RW National Holdings, LLC ("Renters Warehouse") (the "Proposed Transaction").

2.      On May 17, 2022, PTIC II issued a press release announcing entry into a Business Combination Agreement, dated May 17, 2022, to combine PTIC II and Renters Warehouse (as amended on May 27, 2022, July 14, 2022, and September 7, 2022, the "Merger Agreement").

3.      The combined company will have an estimated post-transaction enterprise value of $416 million, consisting of an estimated equity value of $575 million, $159 million in cash, and no debt, assuming no redemptions by PropTech II public stockholders.  Cash proceeds raised will consist of PropTech II's approximately $230 million of cash in trust (before redemptions) and a committed equity facility of $100 million from CF Principal Investments LLC, an affiliate of Cantor Fitzgerald & Co.

4.      On October 28, 2022, PTIC II filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that PTIC II stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Northland Securities, Inc. ("Northland"); and (ii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PTIC II stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek redemption for their shares.

5.      In short, unless remedied, PTIC II's public stockholders will be forced to make a voting or redemption decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, PTIC II's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PTIC II.

10.      Defendant PTIC II is a Delaware corporation, with its principal executive offices located at 3415 N. Pines Way, Suite 204, Wilson, Wyoming 83014.  PTIC II focuses on effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.  PTIC II's shares trade on the Nasdaq Capital Market under the ticker symbol "PTIC."

11.     Defendant Thomas D. Hennessy ("Hennessy") is Chairman of the Board and has been President, Co-Chief Executive Officer ("CEO"), and a director of the Company since inception.

12.     Defendant M. Joseph Beck ("Beck") has been Co-CEO, Chief Financial Officer ("CFO"), and a director of the Company since inception.

13.     Defendant Jack Leeney ("Leeney") has been a director of the Company since December 2020.

14.     Defendant Courtney Robinson ("Robinson") has been a director of the Company since December 2020.

15.     Defendant Margaret Whelan ("Whelan") has been a director of the Company since December 2020.

16.     Defendant Gloria Fu ("Fu") has been a director of the Company since December 2020.

17.     Defendant Adam Blake ("Blake") has been a director of the Company since December 2020.

18.     Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Renters Warehouse is a Single Family Rental ("SFR") services company serving a diverse base of individual and institutional investors through an end-to-end technology platform.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     PTIC II is a blank check company organized for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization or similar business combination with one or more businesses.

**The Proposed Transaction**

21.     On May 17, 2022, PTIC II issued a press release announcing the Proposed Transaction, which states, in relevant part:

> NEW YORK and MINNETONKA, Minn., May 17, 2022 (GLOBE NEWSWIRE) -- PropTech Investment Corporation II (NASDAQ: PTIC) ("PropTech II" or "PTIC"), a special purpose acquisition company targeting businesses in the real estate technology industry, and RW National Holdings, LLC (d/b/a Appreciate) ("Appreciate" or "the company"), the parent holding company of Renters Warehouse, a leading end-to-end Single Family Rental ("SFR") marketplace and management platform, have entered into a definitive agreement which will result in Appreciate becoming a publicly listed company.
>
> Upon closing of the transaction, PropTech II will be renamed Appreciate and will remain listed on the Nasdaq Capital Market under the new ticker symbol "SFR."
>
> Through its operating company, Renters Warehouse, Appreciate offers a full-service technology platform for investing in and owning SFR properties. The company provides a proprietary online marketplace and full-service brokerage teams in over 40 markets, allowing investors to execute with efficiency and confidence. Appreciate's clients benefit from a SFR property management platform that addresses the full spectrum of investor needs, from resident placement and property management to analytics and reporting.
>
> **Appreciate Investment Highlights**
>
> - **Substantial Addressable Market**: Appreciate competes in a U.S. total addressable market estimated at more than $145 billion, with powerful demographic and secular tailwinds. The space remains highly fragmented, with no marketplace platform achieving greater than 1% market share.
> - **End-to-End Marketplace Addresses Industry Gap**: Appreciate's proprietary, end-to-end SFR platform brings together both the marketplace and management segments of SFR that have traditionally been serviced independently. Appreciate helps a diversified customer base of both retail and institutional investors buy, lease, manage and sell SFR property, all in one place, creating a strong network effect and higher customer lifetime value.

- **Strong Unit Economics**: The company has a highly scalable, recurring revenue model with an LTV/CAC3 of over 13x which supports investment in growth. 65% of Appreciate's revenue base is front-loaded4 and realized in the first three months of a customer's life on its platform.
- **Demonstrable Growth Opportunities**: Significant growth opportunities exist across all business segments, including marketing-driven growth with retail investors, geographic expansion, M&A, and new products and services including payments, insurance and mortgage referrals, and landlord and resident services.
- **Experienced Management**: Appreciate's team includes leaders with deep SFR industry and operating expertise and accomplished track records of growing and scaling businesses.

"Single family rental represents an attractive investment opportunity and investment hedge, but the complexity of buying and owning a rental property has until now been a hurdle for many investors," said Chris Laurence, CEO of Appreciate. "Our goal is to democratize SFR ownership by making the end-to-end process more seamless and closer to the experience of managing other types of investments. Combining with PropTech II and becoming a publicly listed company will enable us to scale our business with both retail and institutional investors and capitalize on the strong economic and demographic tailwinds in SFR."

Kevin Ortner, President of Appreciate, added: "As a leader in the SFR industry for more than a decade, we have continually expanded the scope of our service offering. With the capital from our business combination with PTIC, we will be able to scale the breadth of our technology solutions, increase our share in existing markets and rapidly penetrate new geographies."

Tom Hennessy, Chairman, co-CEO and President of PropTech II, commented: "SFR technology is one of our highest conviction investment themes at PropTech II. We believe that Appreciate, with its end-to-end solution, is the category winner in this massive but fragmented TAM. The company has an accomplished leadership team, a proven revenue model, and highly scalable unit economics. We are thrilled to partner with Appreciate and look forward to their public debut."

Scott Honour, Chairman of Appreciate and Managing Partner of Northern Pacific Group, an Appreciate security holder, stated: "Combining Appreciate with PropTech II provides the company with the resources to accelerate its growth while allowing existing security holders to continue to participate in the ongoing upside. The PropTech II team are terrific collaborative partners, and we are excited about working together to write the next chapter in this vibrant industry."

**Transaction Terms & Financing**

The combined company will have an estimated post-transaction enterprise value of $416 million, consisting of an estimated equity value of $575 million, $159

million in cash, and no debt, assuming no redemptions by PropTech II public stockholders. Cash proceeds raised will consist of PropTech II's approximately $230 million of cash in trust (before redemptions) and a committed equity facility of $100 million (the "Committed Equity Facility") from CF Principal Investments LLC, an affiliate of Cantor Fitzgerald & Co., subject to certain conditions precedent.

With no minimum cash condition, the cash in the PTIC trust account and Cantor's committed equity facility is anticipated to support the company's growth capital needs for 2022 and 2023. The net proceeds raised from the transaction will be used to support Appreciate's compelling growth strategy. Appreciate is projected to generate revenue and EBITDA of $113 million and $23 million, respectively, in 2023, exclusive of any accretive benefits from M&A activity made possible by this transaction.

Current Appreciate management, employees and existing shareholders will roll 96% to 100% of their existing equity holdings into equity of the combined company, subject to redemptions by PTIC public stockholders. Assuming no redemptions, existing Appreciate security holders will receive approximately 50% of the pro forma equity as part of the transaction. The business combination has been approved by the boards of directors of both Appreciate and PropTech II. The business combination is expected to close in the second half of 2022, subject to regulatory and stockholder approvals and other customary closing conditions.

For a summary of the material terms of the proposed transaction, as well as a supplemental investor presentation, please see the Current Report on Form 8-K filed today with the U.S. Securities and Exchange Commission (the "SEC"). Additional information about the proposed transaction will be described in PropTech II's proxy statement (the "Proxy Statement") relating to the business combination, which it will file with the SEC.

**Advisors**

Northland is acting as exclusive M&A advisor to PTIC. Cantor Fitzgerald & Co. is acting as exclusive capital markets advisor to PTIC. Kirkland & Ellis LLP is acting as counsel to PTIC. King & Spalding LLP is acting as counsel to CF Principal Investments LLC in connection with the Committed Equity Facility. Gateway Group is acting as investor relations and public relations to both PropTech II and Appreciate. Moelis & Co. is advisor to Appreciate. Winthrop & Weinstine, P.A. and Faegre Drinker Biddle & Reath LLP are acting as counsel to Appreciate.

## The Proxy Statement Contains Material Misstatements or Omissions

22.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to PTIC II's stockholders. The Proxy Statement misrepresents

or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their redemption rights.

23.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Northland; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Northland's Financial Analyses***

24.     The Proxy Statement describes Northland's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Northland's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, PTIC II's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Northland's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek to exercise their redemption rights.

25.     With respect to Northland's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the financial multiples and metrics for each of the selected companies analyzed.

26.     The omission of this information renders the statements in the "Fairness Opinion of Northland Securities, Inc." section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

27.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

28.     For example, the Proxy Statement sets forth that on March 11, 2022, PTIC II submitted an indication of interest to Renters Warehouse.  The Proxy Statement fails, however, to disclose the specific terms of the indication of interest, including the proposed purchase price and resulting equity split.

29.     Additionally, the Proxy Statement sets forth that on March 18, 2022, PTIC II sent an initial draft letter of intent to Renters Warehouse.  The Proxy Statement fails, however, to disclose the specific terms of the march 18, 2022, letter of intent, including the proposed purchase price and resulting equity split.

30.     Moreover, Renters Warehouse updated its projections in September 2022 due to changes in actual performance in 2022 versus the projected performance reflected in the projections as of March 2022 and to reflect current market conditions.  The updated projections estimated total revenue of $31.4 million for 2022 and $88.8 million for 2023, Gross Profit of $15.5 million for 2022 and $49.5 million for 2023 and Adjusted EBITDA of $0.5 million for 2022 and $10.8 million for 2023, a significant reduction to the estimated total revenue of $45.3 million for 2022 and $113.1 million for 2023, Gross Profit of $24.1 million for 2022 and $64.1 million for 2023 and Adjusted EBITDA of $4.2 million for 2022 and $22.6 million for 2023, reflected in the projections as of March 2022.  Northland's fairness opinion, however, does not take into account the update to Renters Warehouse's projections.  The Proxy Statement fails to disclose why the Board has not requested that Northland provide a new or updated fairness opinion and does not intend to secure a new or updated fairness opinion from Northland or any other third-party.

31.     The omission of this information renders the statements in "The Background of the Business Combination Agreement" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

32.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of PTIC II will be unable to make a sufficiently informed voting or redemption decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

33.     Plaintiff repeats all previous allegations as if set forth in full.

34.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresents and/or omits material facts, including material information about (i) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Northland; and

(ii) the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36.      The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37.      By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38.      Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## **COUNT II**

### Claims Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

39.      Plaintiff repeats all previous allegations as if set forth in full.

40.      The Individual Defendants acted as controlling persons of PTIC II within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PTIC II, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, PTIC II stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PTIC II, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to PTIC II stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  November 3, 2022                                **WEISS LAW**

                                                        By _____
                                                        Michael Rogovin
                                                        476 Hardendorf Ave. NE
                                                        Atlanta, GA 30307
                                                        Tel: (404) 692-7910
                                                        Fax: (212) 682-3010
                                                        Email: mrogovin@weisslawllp.com

                                                        *Attorneys for Plaintiff*